UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LYNK LABS, INC., <br><br> Plaintiff, <br><br> v. <br><br> JUNO LIGHTING LLC, et al., <br><br> Defendants. | No. 15 C 4833 <br><br> Magistrate Judge Mary M. Rowland |

### MEMORANDUM OPINION AND ORDER

Lynk initiated this action against Defendants, alleging patent infringement, patent inventorship, and breach of the Mutual Nondisclosure Agreement (MNDA). (Dkt. 107). When the original complaint was filed, Juno Lighting was a wholly-owned subsidiary of Schneider Electric. (*Id.* ¶ 3). In October 2015, Schneider agreed to sell Juno to Defendant Acuity Brands Lighting. (Dkt. 113 at 1). An Equity Purchase Agreement (EPA) among Acuity, Juno, and Schneider set the terms of this sale, including the purchase price. (*Id.*). The deal closed on December 1, 2015. (*Id.*; Dkt. 107 at ¶ 60).

Defendants contend that "the EPA contains and reflects Acuity's, Juno's, and Schneider's highly confidential information, such as the structure of the deal, the terms of the deal, and the adjustments to the final purchase price (including the purchase price deduction)." (Dkt. 113 at 2). When the EPA was produced to Lynk in February 2016, it was designated as "Highly Confidential" under the Protective Or-

der entered in this case. (*Id.* at 3; *see* Dkts. 57, 59). While counsel intended to redact the amount of the purchase price deduction as attorney work product, only the first occurrence of the deduction in the EPA was redacted. Defendants now seek an order (1) affirming that the EPA was properly designated as "Highly Confidential," and (2) redacting all occurrences of the purchase price reduction as attorney work product. (Dkt. 113 at 1). For the reasons discussed below, the motion is granted in part and denied in part.

**A. The Purchase Price Reduction Is Not Attorney Work Product**

Defendants contend that the *amount* of the purchase price reduction is protected by the work product doctrine. (Dkt. 113 at 5–7). They argue that the price reduction "was prepared in view of the current litigation and anticipated further litigation of Lynk's asserted claims." (*Id.* at 6). The work product doctrine, formally codified in Rule 26, protects from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A); *see Eagle Compressors, Inc. v. HEC Liquidating Corp.,* 206 F.R.D. 474, 478 (N.D. Ill. 2002). The intent of the work-product doctrine "is to protect the adversarial process by providing an environment of privacy in which a litigator may creatively develop strategies, legal theories, and mental impressions outside the ordinary liberal realm of federal discovery provisions." *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.,* 145 F.R.D. 84, 87 (N.D. Ill. 1992); *see Hickman v. Taylor,* 329 U.S. 495 (1947). In this case, defendants "bear the burden of proving

that the work-product doctrine applies." *Woodard v. Victory Records, Inc.*, No. 14 CV 1887, 2014 WL 2118799, at *9 (N.D. Ill. May 21, 2014).

After careful review, the Court finds that the amount of the purchase price reduction is not protected by the work product doctrine. Acuity counsel asserts that he "form[ed] an opinion regarding the magnitude of potential exposure to Juno in this litigation and the cost of defending the litigation." (Dkt. 113, Ex. 6 (Fails Decl.) at ¶ 3). While counsel's *opinion* in this regard may be protected work product, counsel acknowledges that the purchase price reduction in the EPA was based not only on his opinion but also on the opinion of other counsel that "informed the *negotiated* purchase price deduction." (*Id.*) (emphasis added). The negotiations took place among Acuity, Juno, and Schneider. Thus, the *amount* of the purchase price reduction agreed to by these entities does not reveal counsel's strategies, legal theories, or mental impressions. Furthermore, the work product doctrine does not protect bare facts. *See In re Bank One Sec. Litig., First Chicago S'holder Claims*, 209 F.R.D. 418, 423 (N.D. Ill. 2002) ("Factual information may not be withheld under the work-product doctrine, but must be produced through interrogatories, depositions or other discovery."); *Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577, 582 (7th Cir. 1981) ("Only where the document is primarily concerned with legal assistance does it come within [the work product doctrine]; technical information is otherwise discoverable."); *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 220 (N.D. Ill. 2013) (finding that "business documents without clear legal analysis or input" even if "based in

part on and reflecting advice of counsel is insufficient to establish that the work product doctrine attaches").

Moreover, Defendants have not established that the primary motivating purpose behind the purchase price reduction was to aid in this litigation. As the Seventh Circuit has explained, in order to invoke the work product privilege, "the primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation." *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983) (citation omitted); *accord Cent. States Se. & Sw. Areas Pension Fund v. Temp Excel Properties, LLC*, No. 09 C 7074, 2010 WL 4735828, at *1 (N.D. Ill. Nov. 15, 2010) ("Essentially, it must be shown that 'the primary motivating purpose' behind the creation of a document 'must be to aid in possible future litigation.'") (Kendall, J.) (quoting *Binks*, 709 F.2d at 1119); *see Stout v. Illinois Farmers Ins. Co.*, 852 F. Supp. 704, 706 (S.D. Ind. 1994) ("To the extent a document is not created primarily to aid in possible future litigation, it is correctly excluded from the protection of the work product privilege."). Instead, Defendants merely assert that the reduction "was prepared in *view* of the current litigation." (Dkt. 113 at 6) (emphasis added). "Materials created in the ordinary course of business which may have the incidental effect of being helpful in litigation are not privileged under the work product doctrine." *RBS Citizens*, 291 F.R.D. at 217; *see also Woodard*, 2014 WL 2118799, at *8 ("Documents that are not primarily legal in nature are also not protected under the work-product doctrine."); *Loctite,* 667 F.2d at 582 ("Only where the document is primarily concerned with legal assistance does it

come within [attorney-client or work-product] privileges."). In other words, the "primary motivating purpose behind the creation of a document" must be to aid in possible future litigation. *Grochocinski v. Mayer Brown Rowe & Maw LLP,* 251 F.R.D. 316, 321 (N.D. Ill. 2008).

The cases cited by Defendants are not persuasive. In *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 237 F.R.D. 176, 184–85 (N.D. Ill. 2006), defendant's attorneys evaluated the merits of claims, defenses and strategies and suggested specific litigation reserve figures. The court determined that because the suggested litigation reserve figures were based solely on counsel's "assessment of the merits and value of the underlying cases," they were protected by the work product doctrine. *Id.* at 185. And in *Vacco v. Harrah's Operating Co.*, No. 07-0663, 2008 WL 4793719, at *6 (N.D.N.Y. Oct. 29, 2008), the court found that litigation summaries provided by counsel to auditors was protected by the work product doctrine. But here, counsel is not seeking protection for his assessment of the potential exposure and cost of the current litigation; instead, the amount of the reduction was a business decision based not only on counsel's input but also on negotiations between the buyer and seller, Acuity and Schneider. Thus, the facts here are more comparable to those in *Nat'l Union Fire Ins. Co. v. Cont'l Illinois Grp.*, No. 85 C 7080, 1988 WL 79513, at *2 (N.D. Ill. July 22, 1988), where the court found no work product protection because the litigation reserve was established by company management with counsel input.

In another case cited by Defendants, *Mondis Tech., Ltd. v. LG Elecs., Inc.*, No. 07 CV 565, 2011 WL 1714304, at *3 (E.D. Tex. May 4, 2011), the court found that documents which "reveal Inpro's overall litigation and licensing strategy [or] provide information—such as balance sheets including licensing and litigation revenues—that show the implementation of that strategy . . . were prepared . . . with the intention of coordinating potential investors to aid in future possible litigation" and were protected by the privilege. To the contrary, the information in this case about the price reduction was reached through an arms-length negotiation to close a financial transaction and its purpose was not to aid in present or future litigation.[1]

**B. The EPA Was Properly Designated as "Highly Confidential"**

When the EPA was produced to Lynk in February 2016, it was designated as "Highly Confidential" under the Protective Order entered in this case. (Dkt. 113 at 3). Two months later, in April 2016, Lynk's counsel requested that the confidentiality designation be lowered to "Confidential" so that counsel could disclose the purchase price deduction to their client prior to settlement negotiations. (Dkt. 113, Ex. 4). Under the default Protective Order in the Local Patent Rules, which was adopted in this case (Dkt. 57, 59), "Highly Confidential" information is "information within the scope of Rule 26(c)(1)(G) that is current or future business or technical trade secrets and plans more sensitive or strategic than Confidential information, the disclosure of which is likely to significantly harm that person's competitive position, or

---

[1] Because the Court finds that the purchase price reduction is not entitled to work product protection, it declines to consider whether any work product protection was waived or if the common interest privilege exception to waiver applies.

the disclosure of which would contravene an obligation of confidentiality to a third person or to a Court" (LPR, App. B). Defendants seek an order affirming that the EPA was properly designated as "Highly Confidential." (Dkt. 113 at 12–14).

When "parties have executed a protective order governing disclosure of confidential information, the court must balance the interests of the party seeking disclosure against those of the party seeking protection." *Saso Golf, Inc. v. Nike, Inc.*, No. 08 C 1110, 2009 WL 3242112, at *2 (N.D. Ill. Oct. 5, 2009). "In order to establish that information should be subject to a protective order, the party seeking protection bears the burden of establishing: (1) that the information is in fact a trade secret or confidential commercial information and (2) that there is good cause to protect the information." *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 300 (N.D. Ill.), *order clarified*, 153 F.R.D. 614 (N.D. Ill. 1993). "However, once the burden of establishing good cause is met, the burden shifts to the party seeking discovery to show why the court should allow dissemination of the materials. *Id.* at 300–01.

Here, the Court finds that Defendants have met their burden and have established that (1) the EPA contains sensitive business secrets, (2) the EPA is protected by a confidentiality agreement, and (3) disclosure to Lynk would cause Acuity a competitive harm. The EPA contains highly confidential information, including the structure of the deal, the terms of the deal, the rights acquired by the parties, and the adjustments made to the final purchase price. (Dkt. 113, Ex. 1). The EPA is also protected by a confidentiality agreement between Acuity and Schneider. (Dkt. 113, Ex. 2 at 5–7). Finally, disclosure of the terms of the EPA—including the portion of

the purchase price reduction related to this litigation—would give Lynk's executives an unfair competitive advantage over Acuity during settlement negotiations.

Plaintiff contends that the structure of the deal "was disclosed publicly by Acuity, and therefore cannot qualify as a business or trade secret." (Dkt. 133 at 10). While the general nature of the deal and the purchase price were publicly disclosed (Dkt. 134, Ex. A), the key details of the deal remain confidential, including the purchase price deduction associated with this lawsuit (*compare id. with* Dkt. 113, Ex. 1). Plaintiff also asserts that the EPA is not covered by the confidentiality agreement between Acuity and Schneider. (Dkt. 133 at 11). To the contrary, the agreement clearly protects any information "disclosed in connection" with the sale of Juno to Acuity, which includes the EPA. (Dkt. 133, Ex. 2 at 5). Finally, Plaintiff argues that no competitive harm would come from disclosing the terms of the EPA to Lynk Lab's executives because "'competitive harm' refers to competition in the party's ordinary course of business, not the litigation in which the document was produced." (Dkt. 133 at 11) (citing *Culinary Foods*, 151 F.R.D. at 301). But *Culinary Foods* addressed whether a party's knowledge that its products pose a public hazard is subject to protection as a trade secret, not whether "competitive harm" included litigation adversaries. 151 F.R.D. at 300–02. And other courts have determined that the mere desire to use confidential information during settlement negotiations is not sufficient to lift a "highly confidential" designation. *See Stanislaus Food Products Co. v. USS-POSCO Indus.*, No. 09 CV 0560, 2012 WL 6160468, at *6 (E.D. Cal. Dec. 11, 2012) ("settlement negotiations was insufficient [reason] to lift the highly

confidential designation"); *accord W. Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc.*, No. 11 CV 1611, 2014 WL 1257762, at *18 (D. Colo. Mar. 27, 2014).

## C. Conclusion

For the reasons given above, Defendants' Motion for Protective Order [112] is **GRANTED IN PART and DENIED IN PART**.

E N T E R:

Dated: October 21, 2016

*[signature]*

MARY M. ROWLAND
United States Magistrate Judge